## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DAWN SHANEFELTER,**                     )
                                          )
Plaintiff,                                )
                                          )
vs.                                       )          2:10cv710
                                          )          Electronic Filing
**UNITED STATES STEEL CORPORATION,**      )
**UNITED STEELWORKERS UNION,**            )
**UNITED STEELWORKERS UNION**             )
**LOCAL 2227, UNITED STEELWORKERS**       )
**UNION LOCAL 2227 DISTRICT 10,**         )
**EDWARD McGOUGH, RICHARD**               )
**PASTORE, JOSEPH BALLAS,**               )
**ROSS McCLELLAN, JR., JOHN GUY**         )
**DAVID NOVAK, and JAN FINNEGAN**         )
                                          )
                                          )
Defendants.                               )


## OPINION


Dawn Shanefelter ("plaintiff") commenced this action in the Court of Common Pleas of

Allegheny County against United States Steel Corporation ("U.S. Steel"), United Steelworkers

Union ("Union"), Local Union 2227, Edward McGough, Richard Pastore, Joseph Ballas, Ross

McClellan, Jr., John Guy, David Novak and Jan Finnegan (collectively "defendants") asserting

breach of contract, intentional misrepresentation, civil conspiracy, intentional interference with

contractual relationship, intentional infliction of emotional distress and retaliation claims.

Defendants removed on the grounds that plaintiff's claims are completely preempted by § 301(a)

of the Labor Management Relations Act ("LMRA") and § 9(a) of the National Labor Relations

Act ("NLRA").  29 U.S.C. § 185(a) (1982); 29 U.S.C. § 159(a).  Presently before the court are

defendants' motion to dismiss and plaintiff's motion to remand.  For the reasons set forth below,

1

both motions will be granted in part and denied in part.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the United States Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

A complaint properly may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) on statute of limitations grounds so long as the untimeliness of the complaint can be gleaned from its face. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 fn.1 (1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

The record as read in the light most favorable to plaintiff establishes the background set forth below. Plaintiff began her employment with U.S. Steel as a laborer on or around January 12, 1998. When plaintiff was hired, she received a Basic Labor Agreement ("BLA") that set

forth the general terms and conditions of her employment as well as the discharge, notice, and grievance procedures.[1] On June 16, 2004, plaintiff was injured in the course of performing her duties as a crane operator. She filed a worker's compensation claim which was settled in March of 2006.

At various times following her work-related injury, plaintiff and her father met with Union representatives Richard Pastore ("Pastore"), Jan Finnegan ("Finnegan"), Joe Ballas, John Guy, David Novak, and Ross McClellan to discuss plaintiff's ability to return to work. Plaintiff alleges that they informed her that she could return to work after receiving her worker's compensation settlement for a period of five years from the date of her injury. Complaint ¶ 17 (Doc. No. 1-2) at 8.

In April of 2008, plaintiff was cleared to return to work. She met with Pastore who directed her to call and schedule a return to work physical with the company physician. Before returning home from their meeting, Pastore informed plaintiff that she had been terminated from U.S. Steel for failing to return to work after accepting the worker's compensation settlement, thereby breaking her continuous service. Plaintiff requested that a grievance be filed on her behalf for improper termination, but union representatives Pastore and Finnegan declined to pursue the matter. Plaintiff claims that she has never received formal notice of her termination as required under the terms of the BLA. Compl. ¶ 24 (Doc. No. 1-2) at 9.

On April 8, 2010, plaintiff filed suit in the Court of Common Pleas of Allegheny County asserting six state-law claims for: (1) breach of contract – wrongful discharge, (2) intentional misrepresentation, (3) civil conspiracy, (4) intentional interference with contractual relationship, (5) intentional infliction of emotional distress, and (6) retaliation. On May 24, 2010, defendants

---

[1] The BLA is the collective bargaining agreement between U.S. Steel and the United Steelworkers of America.

removed pursuant to 28 U.S.C. §§ 1441(a) and (b) and 1446(a), contending that plaintiff's claims are completely preempted by § 301(a) of the LMRA and § 9(a) of the NLRA. On June 30, 2010, defendants filed a motion to dismiss for failure to state a claim, asserting that plaintiff's state actions were displaced by federal law and thus were time-barred under the applicable limitations period. Plaintiff responded by filing a motion to remand, citing lack of subject matter jurisdiction as the legal basis for such relief.

Defendants maintain that all of plaintiff's state-law claims stem from the rights, duties, and obligations created by the BLA. They argue that plaintiff's claims are either founded directly on the collective bargaining agreement or substantially dependent on its analysis. Consequently, defendants assert that removal was proper as all of plaintiff's claims fall within the preemptive scope of § 301 and thus are federal in nature. Accordingly, defendants contend that plaintiff's claims are time-barred under the applicable limitations period for § 301 claims and therefore should be dismissed.[2]

Plaintiff asserts that this action improperly was removed as the matters she asserted in her complaint do not constitute a claim arising under federal law. Plaintiff disputes that her state-law claims implicate the BLA to a degree sufficient to trigger the preemptive power of § 301. Plaintiff further reasons that remand is appropriate because the BLA is ancillary to the crux of

---

[2] In <u>DelCostello v. International Brotherhood of Teamsters</u>, the Supreme Court held that the six-month statute of limitations established in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applied to "hybrid" § 301 actions, where a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching its duty of fair representation. 462 U.S. 151, 170-71 (1983). Plaintiff's complaint makes clear that the present case constitutes a "hybrid" action, as she alleges that both the U.S. Steel and Union defendants breached the terms of the BLA by failing to: (1) ensure her job security, (2) follow the grievance process and other procedures contained therein, (3) provide her with formal notice of termination, (4) advise her of her rights, and (5) take action on her behalf, allegations which implicate the collective bargaining agreement and duty to provide fair representation.

the complaint, which focuses on the purportedly unlawful representations and actions taken by defendants.

The record as well as the applicable law demonstrate that removal was proper and §301(a) of the LMRA completely preempts all but one of plaintiff's state-law claims.[3]

Removal of a state action to federal court is proper only if the action "originally could

---

[3] The court will not reach the question of whether § 9(a) of the NLRA completely preempts state-law actions that implicate the duty of fair representation, as the preemption analysis under § 301 of the LMRA suffices to resolve the matter. Worth noting, however, is that two circuits have squarely confronted the issue and, relying on the Supreme Court's decision in Vaca v. Sipes, 386 U.S. 171 (1967), concluded that §9(a) does in fact carry with it the same preemptive force as § 301 and thus displaces state law. See Richardson v. United Steelworkers of America, 864 F.2d 1162, 1169-70 (5th Cir. 1989) (In light of the clear congressional intent for a uniform body of federal law in the context of collective bargaining agreements, the duty of fair representation must be defined by federal law because "[w]e cannot conceive that Congress intended complete displacive preemption of the Avco variety in the § 301 context, but not in the context of the duty of fair representation arising from a union's status as an exclusive collective bargaining agent under [§9(a) of] the NLRA."); see also BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America, IAMAW District Lodge 4, 132 F.3d 824, 830 (1st Cir. 1997) (observing that "[complete] preemption also can occur by operation of the so-called duty of fair representation" and holding that federal law governs and "state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation."). Lower courts that have passed on the issue likewise have held that § 9(a) supplants state law. See Banks v. Alexander, 493 F. Supp.2d 1008, 1015 (S. D. Ohio 2007) ("[A] state law claim against a labor union [and/or union officials], touching upon its duty to represent all bargaining unit employees fairly, is completely preempted by § 9(a)."); see also Cahoon v. Int'l Brotherhood of Electrical Workers Local 261, 175 F. Supp.2d 220, 225 (D. Conn. 2001) (observing the preeminence of federal law in governing duties owed by an exclusive collective bargaining representative to members of his bargaining unit and explaining that "because this manifestation of congressional will so closely parallels Congress's intentions with regard to section 301, we hold that a district court possesses federal question jurisdiction when a complaint, though garbed in state law raiment, sufficiently asserts a claim implicating the duty of fair representation.").

Moreover, the Supreme Court in Vaca discussed how the duty to provide fair representation requires a union to fairly represent all members in the bargaining units "in its collective bargaining . . .and in its enforcement of the resulting collective bargaining agreement." 386 U.S. at 177. It further explained that the duty requires union representatives to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Id. at 177. It advised that where "it is obvious that [the plaintiff's] complaint alleged a breach by the Union of a duty grounded in federal statutes . . . that federal law therefore governs his cause of action." Id.

have been filed in federal court." <u>Caterpillar v. Williams</u>, 482 U.S. 386, 392 (1987); <u>see</u> <u>also</u> 28 U.S.C. § 1441.[4]  Absent diversity of citizenship, federal-question jurisdiction is required to support removal.  <u>Id.</u> at 392.

It is well-established that "a case is not removable to federal court simply because . . . the defendant raises federal preemption as a defense."  <u>Trans Penn Wax Corp. v. McCandless</u>, 50 F.3d 217, 228 (3d Cir. 1995); <u>see</u> <u>also</u> <u>Caterpillar</u>, 482 U.S. at 393 ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

The question of whether federal question jurisdiction exists is determined by the "well-pleaded complaint rule," which requires that a federal question be "presented on the face of the plaintiff's properly pleaded complaint."  <u>Caterpillar</u>, 482 U.S. at 392; <u>see</u> <u>also</u> <u>Trans Penn</u>, 50 F.3d at 228.  Generally, the well-pleaded complaint rule "makes the plaintiff the master of the claim."  <u>Id.</u> at 392; <u>see</u> <u>also</u> <u>Trans Penn</u>, 50 F.3d at 228 (same).  The rule permits the plaintiff to "avoid federal jurisdiction by exclusive reliance on state law."  <u>Id.</u> at 392.  The well-pleaded complaint rule is not absolute, however, because under the appropriate circumstances "a defendant may be able to remove a case notwithstanding a complaint's apparent grounding in state law."  <u>Trans Penn</u>, 50 F.3d at 228.  The doctrine of complete preemption presents one such circumstance.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Berda v. CBS</u>, 881 F.2d 20, 22 fn.1 (3d Cir. 1989) (discussing how

---

[4] The removal statute provides:

> . . . any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

28 U.S.C. 1441(a).

complete preemption operates to permit removal despite the fact that the claim was pled as a state claim because "the claim is actually considered to arise under the federal law that displaces the state law.").

Under the doctrine of complete preemption, the preemptive force of federal law is "so powerful as to displace entirely any state cause of action." Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 23 (1983). The Supreme Court has explained that complete preemption operates to "convert[] an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life Insurance Co. v. Taylor, 481, U.S. 58, 65 (1987). Thus, when a federal statute is found to preempt an area of state law completely, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393; see also Franchise Tax Bd., 463 U.S. at 24 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").

One such instance of complete preemption occurs in the context of § 301(a) of the LMRA, which provides in pertinent part:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any District Court of the United States having jurisdiction over the parties.

29 U.S.C. § 185 (a). The Supreme Court has held that "§ 301(a) is more than jurisdictional-[] it authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." Textile Workers Union of Am. V. Lincoln Mills, 353 U.S. 48, 450-51 (1957). It reasoned that "the subject matter of § 301(a) is peculiarly one that calls for uniform law" because:

The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.

Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962); see also Berda, 881 F.2d at 22 ("The purpose of preempting state [] law with a uniform federal law is to allow parties to collective bargaining agreements to have some certainty as to the way agreements will be construed by courts.").

The need to fashion uniform law has led the Supreme Court to conclude that § 301 of the LMRA completely preempts any state-law cause of action for a violation of a collective bargaining agreement. See Teamsters, 369 U.S. at 103 ("The dimensions of s [sic] 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute."). It reasoned that "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Franchise Tax Bd., 463 U.S. at 23. It further maintained that "any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." Id. at 23.

The preemptive force of § 301 applies to tort as well as contract actions. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985) (Explaining that "the pre-emptive effect of § 301 must extend beyond suits alleging contract violations" to "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement," regardless of whether such questions arise in the context of a contract or tort claim.). Thus, if a state-law claim is preempted by § 301, removal is proper

regardless of whether the claim is grounded in contract or tort, because "such complaints are considered to state a claim, if any, under section 301 of the LMRA." <u>Berda</u>, 881 F.2d at 22, fn.1; <u>see</u> <u>also</u> <u>Lueck</u>, 471 U.S. at 220 (discussing how a preempted state-law claim "must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law") (internal citations omitted).

A state-law claim is preempted by § 301 if the claim is (1) "founded directly on rights created by collective-bargaining agreements" or (2) "substantially dependent on analysis of a collective bargaining agreement." <u>Caterpillar</u>, 482 U.S. at 394; <u>see</u> <u>also</u> <u>Lueck</u>, 471 U.S. at 214 (The question is "whether the [state-law claim] is sufficiently independent of federal contract interpretation to avoid pre-emption."). For preemption purposes, a state-law claim is not independent of the collective bargaining agreement if its evaluation "is inextricably intertwined with consideration of the terms of the labor contract."[5] <u>Lueck</u>, 471 U.S. at 213. As the Supreme Court expounded in <u>Lingle v. Norge Division of Magic Chef, Inc.</u>, "if resolution of a state law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted and federal labor-law principles . . . must be employed to resolve the dispute." 486 U.S. 399, 405-06. It logically follows that a state-law claim is not preempted "as long as [it] can be resolved without interpreting the agreement itself." <u>Lingle</u>, 486 U.S. at 409-10. Thus, when "[t]he heart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement, that complaint arises under federal law." <u>Caterpillar</u>,

---

[5] The United States Court of Appeals for the Third Circuit has concluded that the phrase "inextricably intertwined" is equivalent to "substantial dependence." <u>See</u> <u>Berda</u>, 881 F.2d at 27 fn. 8 (observing the use of the two phrases in <u>Lueck</u> and explaining that "[t]aking this phrase in the context of the whole opinion, we believe that the court intended [the phrase "inextricably intertwined"] as a statement equivalent to "substantial dependence.").

482 U.S. at 394.

Plaintiff's state-law claims for breach of contract – wrongful discharge, intentional misrepresentation, civil conspiracy, tortious interference with contractual relations, and intentional infliction of emotional distress all require reference to and interpretation of the substantive provisions in the BLA.  Though couched in terms of state-law, these claims clearly are founded directly on rights created by the BLA and/or substantially depend on its analysis in order to assess the  parties' respective rights and obligations.  Consequently, the following state-law claims are preempted by § 301 of the LMRA and thus are federal in nature.

*Breach of Contract Claim*

Plaintiff's contention that the collective bargaining agreement "is ancillary" to her breach of contract claim wholly is without merit.  Plaintiff avers that defendants breached the terms of the BLA by failing to: (1) ensure her job security, (2) comply with the grievance process, notice provision, and other procedures in the BLA, (3) advise plaintiff of her rights under the agreement, and (4) take action on her behalf.  Compl. ¶ 32-33 (Doc. No. 1-2) at 10.

Plaintiff's breach of contract claim owes its existence to the collective bargaining agreement because it established the very rights plaintiff seeks to vindicate and the obligations forming the basis for her assertions of breach.  Plaintiff makes frequent and explicit reference to the BLA in her support of her allegations.  Compl. ¶ 33 (Doc. No. 1-2) at 10 (stating that defendants failed to advise her of her "rights under the BLA" and follow procedures "in the BLA" and take action "as required in BLA").  The fact that a portion of the BLA is attached to the complaint only further emphasizes that the terms of

the contract indeed are at the base of plaintiff's breach of contract claim.  Compare

Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms

is not the subject of dispute, the bare fact that a collective-bargaining agreement will be

consulted in the course of state-law litigation plainly does not require the claim to be

extinguished.").  Predicating a state-law claim on such rights subjects it to complete

preemption.  See  Kline v. Security Guards, Inc., 386 F.3d 246, 253 (3d Cir. 2004) (a

state-law claim is preempted by § 301 when it "derive[s] from the rights and obligations

established by the [collective-bargaining] contract"); see also Lueck, 471 U.S. at 218 (§

301 preemption occurs where "the right asserted" is "derive[d] from the contract").

 Additionally, the BLA shapes the contours of defendants' duties and obligations.

Any determination of whether defendants were in breach of the BLA necessarily would

require an evaluation of what their duties and responsibilities were under the terms of the

agreement.  The need for such an assessment likewise subjects the claim to complete

preemption.  See Kline, 386 F.3d at 253 (Resolution of a state-law claim implicating

duties created by a collective bargaining agreement "inevitably . . . involve[s] contract

interpretation.") (internal quotations omitted).

 Plaintiff's breach of contract claim is "founded directly on rights created by [the]

collective bargaining agreement[]."  Caterpillar, 482 U.S. at 395.  Consequently, the

claim falls within the purview of § 301 of the LMRA and is completely preempted.

*Intentional Misrepresentation*

 Plaintiff's assertion that her intentional misrepresentation claim does not

substantially depend on the terms and provisions of the BLA equally is unavailing.

Under Pennsylvania law, a plaintiff must prove the following elements to prevail on an

intentional misrepresentation claim:

> (1) a representation;
> (2) which is material to the transaction at hand;
> (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;
> (4) with the intent of misleading another into relying on it;
> (5) justifiable reliance on the misrepresentation; and
> (6) the resulting injury was proximately caused by the reliance.

Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999).

Plaintiff maintains that defendants made representations they knew or should have known to be false regarding her employment status. Compl. ¶ 36 (Doc. No. 1-2) at 11. She contends that none of defendants' allegedly unlawful misrepresentations "even arguably invoke[] a term of the collective bargaining agreement." Plaintiff's Brief in Support of Motion to Remand (Doc. No. 16) at 4.

Plaintiff cannot successfully advance this argument in light of her allegations that the misrepresentations directly relate to the particular terms of her employment, which are governed by the BLA. Specifically, plaintiff asserts that defendants intentionally misinformed her as to the amount of time she had to return to work following her work-related injury. It would be impossible to determine whether defendants in fact provided plaintiff with inaccurate information without first determining what information defendants were obligated to relay. See Beidleman v. The Stroh Brewery Co., 182 F.3d 225, 233 (1999) ("Clearly, for a court to decide the merits of this [misrepresentation] claim it must interpret those terms in the agreement setting forth the appellees' obligations, for if the [collective bargaining] agreement does not contain terms that bind the appellees, then no 'misrepresentation' exists.").

Plaintiff's reliance on Kline and Trans Penn for the proposition that resolution of

her claim will not implicate the BLA is misplaced. In both cases the state-law claims survived § 301 preemption because their analysis did not require any reference to or interpretation of the collective bargaining agreements. See Kline, 386 F.3d at 256 ("[T]he fact that job security is addressed in the collective bargaining agreement is of no consequence, because the employees need not refer to . . . the collective bargaining agreement in order to make out their claim.") (internal citations and quotations omitted); See Trans Penn, 50 F.3d at 229-30 ("[T]he state-law claims . . . are "grounded in the [individual employment contracts] given [to] the employees by [the defendants].").

Moreover, the appellant-employees in Kline alleged a violation of a right that the collective bargaining agreement did not create, mention or protect. Similarly, the plaintiff-employees in Trans Penn sought to vindicate a right created through an individual employment contract that was independent from the collective bargaining agreement. In concluding that § 301 did not completely preempt the employees' fraud claims, the Third Circuit explicitly noted that "[t]his is not a situation . . . where the alleged tort is a violation of duties assumed in the collective bargaining agreement." Trans Penn, 50 F.3d at 232.

Conversely, plaintiff's intentional misrepresentation claim precisely is the type of situation "where the alleged tort is a violation of duties assumed in the collective bargaining agreement." Id. at 232. Any fair reading of plaintiff's complaint makes clear that the alleged misrepresentation concerns terms under the BLA. See Beidleman, 182 F.3d at 234 (recognizing as persuasive that plaintiff "did not allege that [the defendant] made a misrepresentation concerning the collective bargaining agreement."). Plaintiff essentially avers that defendants intentionally misrepresented certain provisions in the

BLA in dereliction of their duty to provide fair representation.[6]  In order "to resolve [an intentional] misrepresentation claim . . . a court must identify and interpret substantive provisions of the [collective bargaining agreement]" in order to determine whether [the] defendants properly discharged their duties.  Beidleman, 182 F.3d at 234.  Such an undertaking is required to define the scope of their duties and the accuracy of any information conveyed.  Consequently, plaintiff's state-law claim is substantially dependent on an analysis of the BLA and therefore is displaced entirely by § 301.

*Civil Conspiracy*

Plaintiff's assertion that her civil conspiracy claim will not require interpretation of the BLA is unpersuasive.  In order to state a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done with pursuance of the common purpose; and (3) actual legal damage."  McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. 1998).

Plaintiff avers that defendants "combined, colluded and/or agreed with the intent of unlawfully terminating Plaintiff and/or lawfully terminating Plaintiff by unlawful means" and attempted to "prevent her from gainful employment in accordance with the terms of her *employment agreement*."   Compl. ¶¶ 44-45 (Doc. No. 1-2) at 11 (emphasis added).  Evaluation of this claim requires: (1) a determination of whether plaintiff was unlawfully terminated, (2) identification of the rights under the BLA that defendants

---

[6] The Supreme Court has held that "the question of whether a union has breached its duty of fair representation will in many cases be a critical issue in a suit under [§ 301 of the LMRA] charging an employer with breach of contract."  Vaca, 386 U.S. at 182.

14

allegedly prevented plaintiff from enjoying and (3) an assessment of whether plaintiff's rights under the BLA shielded her from termination. See Beidleman, 182 F.3d at 236 ("Surely, to assess this [civil conspiracy] claim a court will have to identify the rights that the [defendants] allegedly conspired to prevent."). Furthermore, analyzing such a claim requires "a court [] to interpret the terms of the [collective bargaining agreement] to determine what rights, relationships or duties it conferred on the parties."). Id. Each step in the analysis will require interpretation of the BLA in order to determine the lawful means by which an employee can be discharged and what rights were conferred upon plaintiff through the BLA. Plaintiff concedes as much in her brief. See Plaintiff's Brief in Support of Motion to Remand (Doc. No. 16) at 5 ("[T]he Court will only need to look to the agreement to determine the lawful means by which Plaintiff could be terminated . . . ."). Accordingly, plaintiff's state-law claim is substantially dependent on the terms of the BLA and thus is extinguished by § 301 of the LMRA.

*Intentional Interference with Contractual Relationship*

Similarly, an assessment of whether defendants intentionally interfered with plaintiff's employment contract necessarily implicates the terms of the BLA and is substantially dependent on it. Pennsylvania law requires a plaintiff to prove the following elements in order to state a claim of tortious interference with contractual relations: "(1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from the defendant's conduct." Triffin v. Janssen, 626 A.2d 571, 574 (Pa. Super. 1993) (citations omitted).

Plaintiff alleges that defendants intentionally interfered with her employment contract with U.S. Steel. Compl. ¶ 49 (Doc. No. 1-2) at 12. The employment contract to which Plaintiff refers is the BLA. Plaintiff cannot establish that defendants interfered with her contractual rights without first demonstrating what rights she was afforded under the BLA. See Beidleman, 182 F.3d at 235 (The "court cannot evaluate the veracity of the employees' [tortious interference] claim[] . . . without knowing to what rights . . . the employees are referring."). Consequently, resolution of this state-law claim will require interpretation of the BLA, which mandates a finding of § 301 preemption. See Wilkes-Barre Publ'g Co. v. Newspaper Guild of Wilkes-Barre, 647 F.2d 372, 381-82 (3d Cir. 1981) ("[W]here parties to a labor dispute are charged with tortious interference with a collective bargaining agreement, at least in the absence of outrageous or violent conduct, state law causes of action are preempted [by section 301].").

*Intentional Infliction of Emotional Distress*

Plaintiff's assertion that her intentional infliction of emotional distress claim only requires analysis of defendants' conduct, and not the BLA, falls flat. In order to prevail on a claim of intentional infliction of emotional distress, Pennsylvania law requires a plaintiff to prove that the defendant "by extreme and outrageous conduct, intentionally or recklessly caused plaintiff severe emotional distress." Motheral v. Burkhart, 583 A.2d 1180, 1183 (1990).

In order to establish the "outrageousness" of defendants' conduct, a court must look to the terms of the BLA in order to determine whether: (1) the information given to plaintiff was inaccurate, and/or (2) plaintiff's discharge was wrongful. See Capraro v. United Parcel Service Co., 993 F.2d 328, 333 (3d Cir. 1993) (IIED claim required

interpretation of the collective bargaining agreement because it "depend[ed] on whether [the defendant] had the right to discharge [the plaintiff] without cause under the terms of the collective bargaining agreement."); Garley v. Sandia Corp., 236 F.3d 1200, 1209-10 (10th Cir. 2001) ("[I]t could not be determined whether the defendant's conduct was sufficiently outrageous without determining whether the conduct was allowed under the CBA."). Evaluation of this claim thus necessarily is grounded in whether defendants' actions were proper under the terms of the BLA. See Kline, 386 F. 3d at 259 (§ 301 preempted IIED claim where "provisions of the collective bargaining agreement could fairly be read to authorize the employer's conduct.").

Moreover, plaintiff's reliance on Trans Penn to argue against § 301 preemption is misguided. There, the court declined to find preemption of an intentional infliction of emotional distress claim because its evaluation did not require interpretation of the collective bargaining agreement in order to determine whether the defendant's conduct was outrageous. See Trans Penn, 50 F.3d at 232 ("We fail to see how evaluating [the defendant]'s conduct requires interpretation of the collective bargaining agreement and substantially depends on its construction."). The agreement was found not to be implicated solely because the conduct at issue pertained to the defendant's *separate promise* of job security contained in an individual employment contract, and did not involve the job security provisions in the collective bargaining agreement. See Trans Penn, 50 F.3d at 232 (IIED claim not preempted where the factual inquiry focused only "on [the defendant]'s conduct while inducing the employees to enter into the [separate] 'guarantee' agreement" and "d[id] not implicate an analysis of terms or rights created by the collective bargaining agreement.")

Unlike the defendant's conduct in <u>Trans Penn</u>, the conduct of defendants here directly relates to actions taken in purported contravention of the BLA and pertains to the manner in which plaintiff was terminated. The BLA further is implicated in that the emotional distress allegedly experienced would have been directly caused from receiving purportedly inaccurate information relating to the terms and conditions of plaintiff's employment. Thus, this state-law claim is substantially dependent on the terms of the BLA, mandating complete preemption.

*Retaliation*

Plaintiff's retaliation claim is her only surviving cause of action, as it is not substantially dependent on the terms of the BLA and therefore is not preempted by § 301. Plaintiff's complaint does not indicate whether she is asserting a retaliatory discharge claim under Title VII, 42 U.S. § 2000e-3(2), the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(d), or both.

To prevail under Title VII, a plaintiff must show that he or she: (1) engaged in protected activity; (2) was discharged subsequent to or contemporaneously with such activity; and that (3) there is a causal link between the protected activity and the discharge. <u>Woodson v. Scott Paper Company</u>, 109 F.3d 913, 920 (3d Cir. 1997). To succeed under the PHRA, a plaintiff must demonstrate that: (1) the employee engaged in protected activity; (2) the employer was aware of the protected activity; (3) subsequent to the employee's participation in the protected activity the employee was subject to an adverse action by the employer; and (4) there is a causal connection between the employee's participation in the protected activity and the employer's adverse employment action. <u>Circle Bolt & Nut Co. Inc. v. Pennsylvania Human Relations</u>

Comm., 964 A.2d 1265, 1268-69 (Pa. Commw. 2008).

Plaintiff simply alleges that she was terminated for filing a sexual discrimination lawsuit against defendants a few years ago. Compl. ¶¶ 55-58 (Doc. No. 1-2) at 13. Under either scheme, analyzing such a claim will focus on the "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 407 (1988). Additionally, an employer need only articulate a nonretaliatory reason for the discharge in order to defend against this claim, which is a "purely factual inquiry" that "does not turn on the meaning of any provision of a collective-bargaining agreement." Id.

Further, defendants' "contractual rights to take the actions it did and the *motivations* behind them" are analytically distinct inquiries. Garley, 236 F.3d at 1213. In the context of a retaliatory discharge claim, it is irrelevant that an employer had just cause to fire an employee for violating its rules, because the dispositive question is whether "the employer's motivation for the discharge was the rule violation or retaliation for an activity protected by the retaliatory discharge law." Id. at 1213; see also Owen v. Carpenters' District Council, 161 F.3d 1122, 1135 (9th Cir. 2000) (holding retaliatory discharge claim was not preempted where the claim "primarily concerns the conduct of the employee and the conduct and motivation of the employer."). With regard to this claim, it is clear that plaintiff's allegations are "concerned not with [defendants'] contractual rights to discharger [her], but rather with its motives in exercising that right." Garley, 236 F.3d at 1213. Thus, plaintiff's retaliatory discharge claim does not arise from any of the rights, duties, and obligations created by the BLA. Compare Myers v. AK Steel Corp., 156 Fed. Appx. 528 at (3d Cir. 2005) (finding § 301 preemption of

retaliatory discharge claim where the plaintiff alleged "that he was retaliated against for refusing to follow his employer's allegedly unsafe and illegal trucking practices" because it "implicated [the] collective bargaining agreement.").

Put another way, plaintiff's right to be free from retaliatory conduct is a right separate from those conferred by the BLA. See Lueck, 471 U.S. at 212 ("[I]t would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."). As such, the BLA is not implicated and her cause(s) of action for retaliation survives § 301 preemption.

In sum, the heart of plaintiff's complaint revolves around the collective bargaining agreement and her state-law claims for breach of contract, intentional misrepresentation, civil conspiracy, intentional interference with contractual relationship, and intentional infliction of emotional distress essentially are "complaints about the termination of an employment relationship regulated by the collective bargaining agreement and the [LMRA]." Capraro, 993 F.2d at 333.

The record demonstrates that the events which form the basis of her claims occurred by April 7, 2009, at the latest, when she received a letter from the union which unequivocally stated they would take no further action on her behalf. See Ex. A (Doc. No. 11-1) at 4.[7] Plaintiff did not file suit until April 8, 2010, well after the limitations period expired. See Vadino v. A. Valey Engineers, 903 F.2d 253, 260 (3d Cir. 1990) (The date of accrual for a hybrid action commences when "the plaintiff receives notice that the union will proceed no further with the grievance.").

---

[7] Although this document appears as part of defendants' submissions in conjunction with their motions to dismiss, plaintiff did not controvert this specific aspect of defendants' motions despite being ordered to file a response to them (see Order of July 6, 2010, Doc. No. 14) and therefore the court has no basis to read the record as being capable of supporting a different conclusion.

Accordingly, defendants' motion to dismiss will be granted as to these claims because they are time-barred under the six-month statute of limitations period under § 10(b) of the NLRA, the source of the limitations period for § 301 claims.  See Beidleman, 182 F.3d at 237 (holding that district court properly dismissed § 301 claims on statute of limitations grounds where the complaint was filed more than six months after cause of action accrued).

The complaint does not indicate whether plaintiff has complied with any of the administrative prerequisites under Title VII or the PHRA.  See Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997) ("A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC [ ] for conciliation or resolution."). see also Bailey v. Storlazzi, 729 A.2d 1206, 1214 (Pa. Super. 1999) ("Under the PHRA and Title VII, it is well-settled that a plaintiff must exhaust all administrative remedies prior to seeking redress in court.").  Accordingly, to the extent plaintiff seeks to assert a federal cause of action under Title VII, defendants' motion to dismiss will be granted without prejudice to re-file upon a showing of proper exhaustion.  To the extent plaintiff seeks to pursue her retaliation claim under the PHRA, plaintiff's motion to remand will be granted.

Date: March 23, 2011

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

21

cc: Stephen J. Taczak, Esquire

William A. Mitchell, Esquire
Daniel M. Kovalik, Esquire
Katharine J. Shaw, Esquire

Rodney M. Torbic

Via: Electronic Filing